IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CASSANDRA Y. LAMPKIN | § | |
| | § | |
| V. | § | A-12-CV-876-SS |
| | § | |
| TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY | § | |

## ORDER

Before the Court is Cassandra Y. Lampkin's Application to Proceed *In Forma Pauperis* (Clerk's Doc. No. 1) and her Motion to Appoint Counsel (Clerk's Doc. No. 2). The District Court referred the above-motions to the undersigned Magistrate Judge for a determination pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. APPLICATION TO PROCEED *IN FORMA PAUPERIS*

After reviewing Lampkin's Financial Affidavit in support of her *in forma pauperis* motion, the Court finds that she is indigent. Accordingly, the Court HEREBY GRANTS Lampkin *in forma pauperis* status and ORDERS her Complaint be filed without pre-payment of fees or costs or giving security therefor pursuant to 28 U.S.C. § 1915(a)(1). The Court FURTHER ORDERS the Clerk to issue summons in this case and ORDERS the United States Marshal's Service to attempt service in this case without pre-payment of a service fee.

## II. SECTION 1915(e)(2) FRIVOLOUSNESS REVIEW

Because Lampkin has been granted leave to proceed *in forma pauperis*, the Court is required by standing order to review the Complaint under §1915(e)(2), which provides in relevant part that

"the court shall dismiss the case at any time if the court determines that . . . the action or appeal is frivolous . . . ." "A complaint filed IFP may be dismissed as frivolous if it lacks an arguable basis in law or fact," *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995), and the claims "are of little or no weight, value, or importance, not worthy of serious consideration or trivial." *Deutsch v. United States*, 67 F.3d 1080, 1083 (3rd Cir. 1995). In the instant case, Lampkin states that she is alleging violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and the Americans With Disabilities Act ("ADA"). Lampkin believes that she was discriminated against based on her race, her age, her disability, and that she was discharged in retaliation for reporting the discrimination.

At the outset, the Court notes that Lampkin has previously filed at least four cases in the Western District of Texas.[1] In three of those cases, she made complaints against her employer (Cause Nos. 1:11-CV-00596-SS, 1:07-CV-00148-LY, and 1:03-CV-00827-LY), while the remaining case was a social security disability appeal (Cause No. 1:10-CV-00757-LY). In this latter case Lampkin was contending that she was unable to work, and therefore entitled to disability payments from the government. The district court remanded the social security disability appeal in October 2011, with directions that the Commissioner more fully develop one issue and reconsider her claim of disability. When Court staff checked with the Social Security Administration on the status of the case as of the date of this Report & Recommendation, they were told that after another hearing the ALJ denied Lampkin's application on August 3, 2012, and that Lampkin has since appealed that

---

[1] *See Lampkin v. Brock*, No. 1:11-CV-00596-SS (W.D. Tex. filed July 15, 2011); *Lampkin v. The General Counsel, Social Security Administration*, No. 1:10-CV-00757-LY (W.D. Tex. filed Oct. 13, 2010); *Lampkin v. Premieant, Inc. et al.*, No. 1:07-CV-00148-LY (W.D. Tex. filed Mar. 2, 2007); and *Lampkin v. Smith*, No. 1:03-CV-00827-LY (W.D. Tex. filed Nov. 18, 2003).

decision within the agency, where it remains pending.  Of the three previous employment cases, none were successful.  In two of the cases, the District Court adopted the Report and Recommendations of the Magistrate Judge dismissing all of Lampkin's claims (Cause Nos. 1:11-CV-00596-SS and 1:03-CV-00827-LY), and summary judgment was granted against Lampkin in the third case (Cause No. 1:07-CV-00148-LY).  Thus, Lampkin's track record in this court on employment cases is zero for three.

The pendency of the social security case, in conjunction with this new suit, also raises disturbing questions.  In her social security disability application, and the ensuing appeal of the denial of benefits, Lampkin contends that she is completely unable to work after an injury suffered in March, 2008.  As noted, that case was remanded back to the agency for further proceedings in October 2011, and it remains pending.  Yet in the existing case she has stated that as early as November 2011, and until at least February 24, 2012, she was employed with the Texas Department of Public Safety (TDPS), through Peak Performers.[2]  Thus, only a month after Lampkin's case was remanded to the Social Security Administration for it to consider her claim of being unable to do any gainful work, Lampkin was apparently working at the TDPS.  Obviously there is a serious issue regarding Lampkin's credibility presented by these mutually exclusive claims.  The dismissal of the three prior employment claims, combined with the seeming inconsistency (if not fraud) presented by this case in conjunction with the social security appeal, all weigh heavily in the Court's consideration of the merits of this new case.

---

[2]Lampkin's pleadings do not state when she began her employment with TDPS.  But her complaint alleges that she requested an accommodation in November 2011.  That is the earliest date the Court can find in her pleadings in which she states she was working at TDPS.

A.      **Factual Allegations**

This case appears to arise primarily from an incident that occurred on January 11, 2012, during Lampkin's tenure with TDPS.  Lampkin was assigned to work at TDPS through Peak Performers, a contract employment agency.  According to Lampkin, on January 11, 2012, a reporting supervisor, Ms. Elene Hargar, entered the break room where Lampkin and four other workers were taking their lunch break.  Lampkin alleges that she overheard Hargar make comments belittling former employees and their health issues and how she was instructed to focus on hiring younger employees.  Lampkin states that Harger also made racist comments while in the break room.  In addition to the events on January 11, 2012, Lampkin asserts that she made a reasonable accommodation request, asking for a cart to transfer heavy folders, in November, 2011, though it is unclear whether this request was ever honored.[3] Lampkin reported the January 11, 2012, incident on January 17, 2012.  She claims she was then discharged from her work assignment at the TDPS, but received an extension on January 30, 2012, to continue until August 31, 2012.  This extension was communicated to her by Peak Performers, not the TDPS.  Lampkin asserts that the extension was reversed and she was discharged by the TDPS on February 24, 2012, in alleged retaliation for her having filed a complaint of discrimination.

B.      **Claims under Title VII**

Title VII makes it unlawful for an employer to discriminate against an individual based on race. 42 U.S.C. § 2000e-2.  Claims under Title VII are analyzed through the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See McCoy*

---

[3]Lampkin presents conflicting accounts.  In her complaint, she asserts that the request was granted (in her answer to question 4).  However, in her EEOC filings, she states that her request for a cart was never honored.

*v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  Under that framework, a plaintiff must first establish a prima facie case of discrimination before the case may proceed.  *Id.*  To establish a prima facie claim of racial discrimination under Title VII, Lampkin must show that she was "(1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated."  *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *see also Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

Here, Lampkin's allegations are insufficient to establish a prima facie case of racial discrimination by the TDPS.  Specifically, she has not provided any evidence showing how she was treated differently from other colleagues.  In her EEOC filings, Lampkin makes allegations that she was treated less favorably than her non-Black colleagues, but the record is devoid of facts to support these allegations.

Aside from her conclusory assertions of less favorable treatment, the only allegations that could support a discrimination claim is the incident on January 11, 2012, when Lampkin contends she overheard Hargar make racist remarks in the break room.  Yet this fact, even if assumed to be true, does not show how Lampkin was treated differently when compared to her other colleagues at TDPS.  To do so, Lampkin must show that "the employer gave preferential treatment to another employee under identical circumstances."  *Okoye*, 245 F.3d at 514 (internal quotations and citations omitted).  Lampkin has not provided any facts to show how TDPS gave preferential treatment to another employee.  The Court is further disturbed by the fact that Lampkin presents no specific facts regarding what Hargar said.  In her EEOC affidavit, Lampkin did not even assert that Hargar made racist remarks.  Lampkin states that Harger discussed how she felt about President Obama's politics.

Because nothing in the pleadings indicates that Lampkin was subject ed to less favorable treatment when compared to her colleagues, her claims under Title VII should be dismissed as frivolous.

**C.    Claims under ADEA**

The ADEA makes it "unlawful for an employer to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "To establish an ADEA claim, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (internal quotations and citation omitted).  For her claim under the ADEA, Lampkin relies on an alleged statement made by Hargar regarding being encouraged to hire younger employees  Additionally, Lampkin alleges that during her tenure at the TDPS, she was treated less favorably than her younger colleagues.

Where remarks are offered as circumstantial evidence of discrimination, a plaintiff needs to show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).  Although Lampkin asserts that Hargar is a supervisor at TDPS, Lampkin presents no evidence that Hargar was either primarily responsible for Lampkin's employment or had influence over the decisionmaker who did control Lampkin's position.   Additionally, Lampkin alleges no facts regarding how younger employees were treated more favorably. Thus, given that nothing in the record suggests Hargar was

responsible for employment decisions regarding Lampkin, Lampkin's claim under ADEA should also be dismissed as frivolous.[4]

## D.     Claims under ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To establish prima facie discrimination under the ADA, Lampkin must show (1) that she has a disability; (2) that she was qualified for the position; and (3) that she was subject to an adverse employment decision due to her disability.  *Dupre v. Charter Behavioral Health Systems of Lafayette, Inc.*, 242 F.3d 610, 613 (5th Cir. 2001); *Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999).  "Disability" is defined in the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Although a plaintiff's disability need not be the sole cause of any adverse employment decision under the ADA, the disability "must actually play a role in the employer's decision making process and have a determinative influence on the outcome."  *Pinkerton v. Spellings*, 529 F.3d 513, 517–19 (5th Cir. 2008).

---

[4] If Lampkin were to present Hargar's remarks as direct evidence of discrimination, she still would have failed to present enough evidence to state an ADEA claim.  For comments to constitute sufficient evidence of age discrimination, Lampkin would need to demonstrate that the comments were "made by an individual with the authority over the employment decision at issue."  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).  As shown in the paragraph above, she has not provided any evidence to suggest that Hargar was responsible for an employment decision concerning Lampkin..

Even assuming that Lampkin has satisfied the first two elements for establishing a claim under the ADA, Lampkin does not assert facts suggesting that her disability played a role in the decision to terminate her employment.  After reviewing her complaint, the only relevant fact Lampkin alleges is that she overheard Hargar make belittling comments about the health issues of former employees when Lampkin was on her lunch break.  Lampkin also states that she made a reasonable accommodation request for a cart to transfer heavy folders to Hargar in November, 2011. However, as noted previously, it is unclear whether this request was ever honored.[5]

Again, because Lampkin relies on a statement for her claim of discrimination, the Court considers whether she has presented sufficient facts to show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker."  *Reed*, 701 F.3d at 441. Lampkin has not presented any evidence that Hargar was either primarily responsible for Lampkin's employment decision or had influence over the relevant decisionmaker.  Neither of the facts alleged remotely suggest that Lampkin's alleged disability had a "determinative influence" in the outcome or even played a role in the decision to terminate her.  In other words, Lampkin has presented no facts that suggest any causal link between her alleged disability and TDPS's employment decision. Consequently, Lampkin's claims under the ADA should be dismissed as frivolous.

**E.      Retaliation Claims**

Lampkin also contends that she was discharged from her assignment at the TDPS in retaliation for reporting discrimination.  Analysis of Lampkin's retaliation claim under Title VII is

---

[5] Even if Lampkin's request was not honored, she has still failed to present any evidence that her disability was a determining factor in her employment decision.

also governed by the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Hockman v. Westward Communications, LLC*, 407 F.3d 317, 330 (5th Cir. 2004)  Consequently, Lampkin must first establish a prima facie case of retaliation by demonstrating (1) that she engaged in protected activity; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse employment action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

Though the Court reaches this conclusion reluctantly, it appears that Lampkin has alleged sufficient facts to avoid dismissal of her retaliation claim at this time.  Lampkin plainly engaged in protected activity by filing a report with the EEOC.  Furthermore, the temporal proximity between Lampkin reporting the discrimination and her termination is also a factor in her favor. *See Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (noting that the causation element of a prima facie case of retaliation may be established "when the protected act and the adverse employment action are very close in time") (internal quotations and citations omitted).  This does not mean, however, that the claim is meritorious, or even likely to succeed.  It means only that Lampkin has alleged enough facts to survive the Court's review of her case at this time.  The Court cautions Lampkin that the Court may make a determination in the future that the action should be dismissed because the allegation of poverty is untrue or the action is frivolous or malicious pursuant to 28 U.S.C. § 1915(e).  Lampkin is further advised that, although she has been granted leave to proceed *in forma pauperis*, the Court may, in its discretion, impose costs of court against her at the conclusion of this lawsuit, as in other cases. *See Moore v. McDonald*, 30 F.3d 616, 621 (5th Cir. 1994).  This latter warning should be given serious consideration by Lampkin, given her history of filing numerous—and inconsistent—claims in this court.

## II.  REQUEST FOR APPOINTMENT OF COUNSEL

In addition to her Application to Proceed *In Forma Pauperis*, Lampkin also filed a Motion to Appoint Counsel.  Clerk's Doc. No. 2.  Though the Court has determined that Lampkin's retaliation claim is not frivolous, it declines to appoint her counsel to pursue the claim.

Although Title VII grants a party the right to request an attorney, it does not guarantee a litigant will have one appointed.  The decision to appoint an attorney is within the broad discretion of the trial judge given the particular facts of the case.  *Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir. 1990).[6]  In determining whether a plaintiff's request for counsel should be granted, the Court considers the following factors: (1) the plaintiff's financial ability to retain counsel, (2) the efforts taken by the plaintiff to obtain counsel, and (3) the merits of plaintiff's claim.  *See Gonzalez*, 907 F.2d at 580.  "No single factor is conclusive."  *Id.*  Courts also consider the plaintiff's ability under the circumstances of the case to present the case without the assistance of an attorney.  *Poindexter v. FBI*, 737 F.2d 1173, 1189 (D.C. Cir. 1984), *cert. denied*, 107 S. Ct. 911 (1987); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982); *Maxwell v. Kight*, 974 F. Supp. 899, 902 n.2 (E.D. Tex. 1996).

Furthermore, the Court must also  remain mindful of the unfairness of imposing involuntary servitude upon a member of the bar when likelihood of success upon claims appears slight.  *Tatum*

---

[6]Unlike Title VII cases, courts do not "appoint" counsel in ADEA cases. *DiAngelo v. Illinois Dep't of Public Aid*, 891 F.2d 1260, 1262 (7th Cir. 1989).  Rather, under § 1915(e), the Court may *request* an attorney to represent impoverished litigants.  *See* 28 U.S.C. § 1915(e)(1); *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 302 (1989); *DiAngelo*, 891 F.2d at 1262.  The principles governing the decision whether to appoint counsel for an ADA complainant are similar to those under Title VII.  Such a decision lies "solely within the discretion of the court" and the ADA complainant has no absolute right to an appointed counsel.  *Johnson v. City of Port Arthur*, 892 F. Supp. 835, 839 (E.D. Tex. 1995).

*v. Community Bank*, 866 F. Supp. 988, 995 (E.D. Tex. 1994).  Moreover, there are no federal funds allocated to the prosecution of civil lawsuits.  For that reason, if the Court were to appoint an attorney, counsel would have to serve entirely without compensation unless the lawsuit is successful and attorney's fees are awarded.

### A.      Financial Ability to Retain Private Counsel

Based upon the financial affidavit filed with this Court, the Court has granted Lampkin *in forma pauperis* status.  Given this, it cannot be said that this factor cuts toward denying her Request for Appointment of Counsel.

### B.      Efforts to Secure Counsel

To be eligible for appointed counsel, a plaintiff must make "a reasonably diligent effort under the circumstances to obtain counsel."  *Lee v. United States Postal Service*, 882 F. Supp. 589, 594 (E.D. Tex. 1995) (quoting *Bradshaw v. Zoological Soc'y*, 662 F.2d 1301, 1319 (9th Cir. 1981)).  Courts have suggested that a significant inquiry on this issue is whether the complainant has pursued the possibility of a contingent fee arrangement in his efforts to locate an attorney.  *Lee*, 882 F. Supp. at 594.  In her Request for Appointment of Counsel, Lampkin relates that she has contacted several attorneys who declined to represent her.  Two of the law firms Lampkin contacted declined to represent her based on her inability to pay their fees.  The third law firm she contacted declined to represent Lampkin due to law firm's work load.  Lampkin also asserts that she has contacted Texas Rio Grande Legal Aid, but they were not able to give assistance to her because they do not help with employment issues.  Clerk's Doc. No. 2.  It does not appear that she has contacted any local lawyer referral service.  Based on this record, it seems that Lampkin's search for an attorney has been reasonably diligent.

11

## C.    Merits of the Case

Examination of the merits of the case *sua sponte* before the defendant has been required to answer is similar to the frivolousness review called for when a party is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2).  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).  Regarding employment discrimination cases, one court in the Fifth Circuit has stated:

> Appointment of counsel is warranted only if a plaintiff's position seems likely to be of substance.  This threshold requirement is not satisfied by mere bald assertions which technically put a fact in issue and suffice to avert summary judgment. . . . The weight of the evidence is not at issue on a motion to dismiss, but is part of the threshold consideration for appointment of counsel.  A plaintiff who has stated a claim but offered scant evidence in support of that claim can expect to survive a motion to dismiss and yet fail to obtain appointment of counsel.

*Reado v. Texas General Land Office*, 929 F. Supp. 1046, 1053 (E.D. Tex. 1996) (*citing Smith v. City Univ. of N.Y.*, 1993 WL 106395 at *3 (S.D.N.Y. Apr. 7, 1993)).  Based on the analysis in the preceding section, the only claim that survives a frivolousness review is the retaliation claim.  Here, Lampkin appears to rely exclusively on the temporal proximity of her reporting the discrimination and her termination from TDPS.  However, even if Lampkin is able to establish all the elements of a prima facie case of retaliation under Title VII, TDPS may respond by offering "evidence that its actions were justified by a legitimate, nondiscriminatory reason."  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).  Although TDPS has not yet responded to Lampkin's allegations, Lampkin's EEOC filings indicate that Lampkin was on a temporary assignment to TDPS, that TDPS claims Lampkin was no longer needed and that her assignment simply ended.  Taken in conjunction with Lampkin's credibility issues (discussed above), and history of asserting that negative employment outcomes are the result of discrimination, there is very little to suggest that Lampkin's retaliation claim has merit.

**D.  Plaintiff's Ability to Present Her Case**

As this case is in the beginning stages, there is limited information to allow this Court to gauge Lampkin's ability to present her case, but what the undersigned has seen is favorable.  This is Lampkin's fourth employment discrimination suit, and she is plainly aware of the requirements of such a case.  Furthermore, in the instant case, Lampkin filed her claim with the EEOC and appears to have followed all of the necessary procedures to preserve her discrimination claim.  Additionally, her submissions to the Court have been ably written.  From the record presented, Lampkin's Complaint clearly evinces an ability to understand what is necessary to prosecute a lawsuit in federal court.

Considering the above factors, the Court declines to appoint Lampkin an attorney, and Lampkin's Motion to Appoint Counsel (Clerk's Doc. No. 2) is **DENIED.**

### III.  ORDERS AND RECOMMENDATIONS

As stated above, the Court **HEREBY GRANTS** Lampkin *in forma pauperis* status (Clerk's Doc. No. 1) and **ORDERS** her Complaint be filed without pre-payment of fees or costs or giving security therefor pursuant to 28 U.S.C. § 1915(a)(1).  The Court **FURTHER ORDERS** the Clerk to issue summons in this case and **ORDERS** the United States Marshal's Service to attempt service in this case without pre-payment of a service fee.

The undersigned **FURTHER RECOMMENDS** that the District Court dismiss Plaintiff's discrimination claims under Title VII, the ADEA, and the ADA pursuant to 28 U.S.C. § 1915(e)(2)(B).  The sole remaining claim would be Lampkin's retaliation claim.

Finally, Plaintiff's Motion to Appoint Counsel (Clerk's Doc. No. 2) is **HEREBY DENIED**.

## IV.  WARNING

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 22nd day of January, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE